UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACY NOVICK,

      Plaintiff,

v.

MICHELLE L. FRANK, et al.,

      Defendants.

Case No. 2:15-cv-3043
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [ECF No. 7]. For the following reasons, that Motion is **GRANTED**.

### I.

The parties have a long and complicated history. On December 6, 2007, Plaintiff Stacy Novick, Defendant Michelle Frank ("Michelle" or "Mrs. Frank"),[1] and Defendant Timothy Frank (Michelle's fiancé at the time; her husband now), entered into a written Surrogacy Agreement (the "Agreement"). (*See* Compl. ¶ 5 [ECF No. 1].) Under the Agreement, Defendants agreed to assist Plaintiff in achieving her goal of becoming a parent by carrying to term embryos created through in vitro fertilization using anonymous donor eggs and sperm. (*See id.* ¶ 5.) Among other promises, Defendants agreed to relinquish physical custody of and any and all rights and obligations to the children immediately upon birth and to voluntarily cooperate in the lawful and prompt termination of parental rights in any legal proceeding required for Plaintiff to legally become the mother of any children born. (*See id.*) After signing the Agreement, Mrs. Frank was implanted with zygotes, and she became pregnant with twins. (Oct. 2, 2009 Juvenile Ct. Decision

---

[1] Defendant Michelle Frank was named Michelle Barber for most of the length of this dispute.

at PageID 145 [ECF No. 12-1].) Due to complications with the pregnancy, Mrs. Frank gave birth prematurely to the twins on May 15, 2008. (*Id.* at PageID 147.) One of the children passed away in late June of that year. (*See* Compl. ¶¶ 6–7.)

The parties' relationship soured after the twins' birth, and on July 9, 2008, Plaintiff sued Defendants for their alleged breach of the Agreement in the Franklin County Court of Common Pleas, General Division. (Mot. to Dismiss at 2 [ECF No. 7].) On October 2, 2008, Plaintiff voluntarily dismissed that case without prejudice. (*See* Defendants' Mot. to Dismiss [ECF No. 7]; Voluntary Dismissal at PageID 96 [ECF No. 7-1].)

On August 18, 2008, Plaintiff filed a parentage action in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. (Compl. ¶ 13.) She requested DNA testing and sought to disestablish Mrs. Frank's maternity. (Juvenile Ct. Compl. at PageID 125 [ECF No. 12-1].) Plaintiff amended her complaint twice in that action—on October 1, 2008 and on October 3, 2008. (*See* Compl. ¶ 13.) Plaintiff requested that the juvenile court issue an order finding (i) that Plaintiff, not Mrs. Frank, was the mother of the children and (ii) that even if Mrs. Frank were the mother of the children, Plaintiff should, nonetheless, be awarded temporary and permanent custody. (Juvenile Ct. Am. Compl. at PageID 136–38 [ECF No. 12-1].) On the same day that she filed her second amended complaint, Plaintiff also filed a motion requesting that the juvenile court make a legal determination of parentage pursuant to O.R.C. § 3111.02(A). (*See* Compl. ¶ 13.) Mrs. Frank filed a counterclaim for custody on October 21, 2008. (*See* Juvenile Ct. Decision & J. Entry at PageID 140 [ECF No. 12-1].)

On April 27, 2009, the juvenile court granted partial summary judgment in favor of Plaintiff. (*See* Juvenile Ct. Decision & J. Entry at PageID 141.) The court determined Plaintiff to be the legal and natural mother of the surviving child. (*See id.*) The case proceeded to trial on

Mrs. Frank's counterclaim for custody. Following an August 2009 trial, the court, on October 2, 2009, filed a decision and judgement entry denying Mrs. Frank's counterclaim and ordering that Plaintiff retain custody of the child. (*See id.* at PageID 156, 161.) In that decision, the juvenile court found, among numerous other things, that

> 18. Throughout the pregnancy, up until July 2008, each party operated under the terms of the Surrogacy Agreement.
>
> 19. Although there were disagreements and the parties struggled with their interpersonal relationship under the stress of the pregnancy, neither party materially breached the Surrogacy Agreement during the course of the pregnancy up to and including the birth of the twins.
>
> . . . .
>
> 36. Despite their differences, throughout the pregnancy and immediately after the birth of the children, Defendant never gave any indication to Plaintiff that she would not comply with the terms of the Surrogacy Agreement.
>
> . . . .
>
> 58. Defendant specifically testified that she always intended to comply with the Surrogacy Agreement. However, she ultimately decided to change her mind due to increasing concerns about Plaintiff's harassing, angry and abusive nature. . . .
>
> 59. On or about July 26, 2008, after a complete breakdown in the parties' relationship, Defendant refused to proceed under the terms of the Surrogacy Agreement.

(*Id.* at PageID 145, 148, 154.)

In the October 2 decision, the juvenile court made several additional orders. First, it sentenced Mrs. Frank to three days in jail for her failure "to purge herself of the contempt finding issued February 4, 2009." (*Id.* at PageID 161.) Defendant could avoid the jail sentence if she paid $1,500 to Plaintiff on or before December 31, 2009. (*Id.*) Next, the court awarded Plaintiff $3,270—her attorney fees and costs associated with her motion to compel. (*Id.*) Plaintiff's motion to compel dealt with her seven (7) failed attempts to take Mrs. Frank's deposition. (*Id.* at

3

PageID 160.) The court ordered that Mrs. Frank provide Plaintiff the surviving child's birth certificate and social security card. (*Id.* at PageID 161.) And the court ordered the surviving child's birth certificate corrected as to the child's name and mother. (*Id.*)

Mrs. Frank appealed the juvenile court's April 27 and October 2, 2009 decisions. On June 10, 2010, Ohio's Tenth District Court of Appeals overruled Mrs. Frank's assignment of error and affirmed the juvenile court's decisions. *S.N. v. M.B.*, 10th Dist. Franklin No. 09AP-1021, 188 Ohio App. 3d 324, 2010-Ohio-2479, 935 N.E.2d 463, ¶ 42.

Mrs. Frank filed a notice of appeal with the Ohio Supreme Court. (*See* Agreed Entry at PageID 98 [ECF No. 7-2].) However, in an August 3, 2010 Agreed Entry approved by the juvenile court, Mrs. Frank agreed to dismiss her notice of appeal. (*Id.*) In addition to terminating the case, the juvenile court ordered that Mrs. Frank would "no longer be obligated to pay to the Plaintiff the sums of $1,500.00 and $3,270.00 as and for sanctions and attorney fees respectively previously awarded herein." (*Id.*)

Plaintiff filed her Complaint in this Court on November 30, 2015. Plaintiff alleges that Defendants breached the Surrogacy Agreement. (Compl. at 7–8 [ECF No. 1].) In particular, she alleges that

   a. The Defendants refused to relinquish physical custody of and any and all rights or obligations to the children immediately upon birth (including breast feeding or providing breast milk for the children);

   b. The Defendants failed to abstain from contacting or attempting to contact the children;

   c. The Defendants failed to recognize or agree that the children were the Plaintiff's children;

   d. The Defendants refused to sign documents and participate in legal proceedings required to ensure that the Plaintiff was legally determined to be the mother of the children;

4

  e. The Defendants refused to voluntarily cooperate in the lawful and prompt termination of parental rights of the children;

  f. The Defendants refused to execute Health Care Powers of Attorney authorizing Plaintiff to care for the children when Nationwide Children's Hospital failed to acknowledge the Contract and refused to allow the Plaintiff to exercise her parental rights;

  g. The Defendants named the children and refused to acknowledge the Plaintiff's naming of the children.

(*Id.* at 6–7.) Plaintiff also asserted an intentional infliction of emotional distress claim. (*Id.* at 9.) That claim has since been dismissed, however. (*See* Feb. 2, 2016 Order at 1 [ECF No.13].) Defendants now move to dismiss Plaintiff's breach of contract claim. They insist that the claim is barred by res judicata.

## II.

### A. Motion to Dismiss Standard

  Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not

5

"suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A court typically cannot consider "matters outside of the pleadings" when deciding a motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). There are several exceptions to this general rule though. Exhibits to the pleadings are "part of the pleadings for all purposes." Fed. R. Civ. P. 10(c). Documents not attached to a plaintiff's complaint but introduced by the defendant on a motion to dismiss will also be considered as part of the pleadings if "'they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner*, 108 F.3d at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Additionally, a court may consider "materials that are public records or otherwise appropriate for taking judicial notice." *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 925 (N.D. Ohio 2009); *see also Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

In deciding Defendants' Motions to Dismiss, the Court will consider the documents and prior judicial proceedings referenced in the Complaint. Some relevant documents are attached to the Complaint. Other relevant documents, including the proceedings before the Franklin County Juvenile Court and the Franklin County Court of Common Pleas, are attached to the Motion to Dismiss and Plaintiff's Memorandum in Opposition.

**B.     Res Judicata**

Defendants contend that res judicata bars Plaintiff's breach of contract claim. According

6

to Defendants, Plaintiff already brought its claim in the common pleas court proceedings, already brought, or could have brought, its claim in the juvenile court proceedings, and settled this case when Mrs. Frank agreed to dismiss her notice of appeal to the Ohio Supreme Court. (Mot. to Dismiss at 4–6 [ECF No. 7].)

As the Sixth Circuit has explained, this Court "'must give the same preclusive effect, under the doctrines of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state.'" *ABS Indus., Inc. v. Fifth Third Bank,* 333 F. App'x 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus,* 185 F.3d 579, 593 (6th Cir. 1999)). "'[I]f an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court.'" *Id.* (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1537 (6th Cir. 1987)). Thus, the Court looks "to the state's law to assess the preclusive effect it would attach to that judgment." *Id.*

"Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Doe v. Jackson Local Schs. Sch. Dist.,* 422 F. App'x 497, 500 (6th Cir. 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St. 3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject of a previous action." *O'Nesti,* 2007-Ohio-1102, ¶ 6. The doctrine bars subsequent actions whose claims "could have been litigated in the previous suit." *Id.* "Claim preclusion has four elements: '(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the

7

transaction or occurrence that was the subject matter of the previous action.'" *Doe*, 422 F. App'x at 501 (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)).

"Issue preclusion, on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies[,] . . . even if the causes of action differ." *O'Nesti*, 2007-Ohio-1102, ¶ 7. Issue preclusion applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994).

### C. Juvenile Court Case

Pointing to the nature and scope of the juvenile court case, Defendants insist that res judicata bars Plaintiff's breach of contract claim. Defendants contend that the Surrogacy Agreement was "at issue during the Juvenile Division litigation." (Reply at 2 [ECF No. 14].) The juvenile court, in Defendants' view, "went to great lengths to discuss and analyze the terms of the parties['] Surrogacy Agreement" and "awarded Plaintiff a reimbursement of a portion of her attorney fees as a sanction, which amounts to Plaintiff's monetary damages in the underlying action." (*Id.*) Defendants assert that Plaintiff did not "argue or even attempt to argue that she was entitled to further monetary damages . . . even though the [juvenile court] showed a willingness to grant monetary damages." (*Id.*)

Plaintiff insists that res judicata does not apply here because the only issues before the juvenile court were parentage and custody. (Mem. in Opp'n at 6 [ECF No. 12].) And given that the juvenile court purportedly "does not have jurisdiction to hear civil damages claims," Plaintiff

8

contends that she could not have even brought a breach of contract claim in the juvenile court action. (*Id.* (emphasis deleted).)

In their arguments, the parties use the generic phrase, res judicata. Most relevant here, though, is the doctrine of claim preclusion. Under that doctrine, the question for the Court to decide is whether Plaintiff's breach of contract claim was or could have been litigated before the juvenile court. *See Doe*, 422 F. App'x at 501.

A review of the juvenile court proceedings reveals that Plaintiff's breach of contract claim could have been litigated in those proceedings. The juvenile court discussed the Agreement at length in its October 2, 2009 decision. The court outlined the relevant terms of the Agreement, determined the validity and enforceability of the Agreement, heard and evaluated extensive testimony regarding the parties' actions under the Agreement, and made several factual findings as to whether and when the parties breached the Agreement. (*See generally* Juvenile Ct. Decision & J. Entry [ECF No. 12-1].) The juvenile court considered many of the issues that it would have needed to consider in adjudicating Plaintiff's breach of contract claim. Plaintiff, however, failed to assert a breach of contract claim or request damages under the Agreement.

Citing O.R.C. § 2151.23, Plaintiff avers that it could not have asserted a breach of contract claim or requested damages under the Agreement because the juvenile court lacks jurisdiction to decide such matters. (Mem. in Opp'n at 6.) Section 2151.23 outlines the various subjects over which the juvenile court has jurisdiction. And, indeed, "[a] juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute." *Rowell v. Smith*, 133 Ohio St. 3d, 2012-Ohio-4313, 978 N.E.2d 146, ¶ 13. The Ohio Supreme Court has indicated, however, that

> [t]he term "jurisdiction" encompasses both subject-matter jurisdiction, i.e., the court's power to adjudicate the merits of a case, and the exercise of that

9

jurisdiction. "'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, . . . the right to hear and determine is perfect[,] and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred . . . .'"

*Id.* (internal quotation marks omitted). Here, the juvenile court had jurisdiction over the parties and their parentage and custody disputes. *See* § 2151.23. Once the juvenile court obtained that jurisdiction, it then had jurisdiction to decide the interrelated question of whether Defendants breached the Surrogacy Agreement and, if so, what damages stemmed from that breach. *See Rowell*, 2012-Ohio-4313, ¶ 13.

Given that Plaintiff could have brought her breach of contract claim in the juvenile court proceedings—or at least petitioned that court for damages under the Agreement—but failed to do so, Plaintiff's breach of contract claim is barred by claim preclusion.[2]

### III.

For the reasons stated above, Defendants' Motion to Dismiss [ECF No. 7] is **GRANTED**.

**IT IS SO ORDERED.**

\_\_9-22-2016_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] The Court need not consider Defendants' additional res judicata arguments given that it disposes of Plaintiff's claim based on the preclusive effect of the juvenile court proceedings.